Good morning. My name is Lisa Bazant and I represent Jesse Campbell. Mr. Campbell's case is one that should never have come before this court. Mr. Campbell got swept up in a DEA investigation of a much larger dispensary, medical marijuana dispensary, in Bozeman, Butte, and other areas in Montana. In comparison to his brother, Charlton Campbell, who owned Montana Buds, Jesse Campbell had a very small provider grow in his home, in the garage, in the valley of Bozeman, Montana. Jesse Campbell was allotted 30 cardholders that he provided medical marijuana for, in comparison to his brother, Charlton, who owned Montana Buds and had storefront dispensaries. Back in 2016, the DEA became interested in Montana Buds because there was information that Montana Buds was acting outside the scope of the Medical Marijuana Act. And in the course of their investigation, they came upon what they call a source of information, an individual who was sitting in jail in Gallatin County on 10 individual felonies, many of which were crimes of dishonesty, tampering with physical evidence at a crime scene, identity theft, theft. And it was when they were talking to this source of information that they asked, hey, what do you know about Jesse Campbell? And it was based upon what this source of information said that led Jesse Campbell to be involved in this. First of all, the source of information identified Jesse as being a partner with his brother, Charlton, in Montana Buds, which we know for a fact is not true. But then he went on to say that he would purchase bulk amounts of marijuana from Jesse two to three times a week, half pound quantities for $1,100 per half pound for a period of six months. That's a lot of marijuana. Pardon me, Counsel. Yes. Well, I appreciate the relation of events that you're going through. But why don't you zero in on the points on appeal? Well, first of all, the point on appeal would be the suppression from the search warrant. Why is the search warrant illegally procured based on the evidence which the magistrate had before him? For a couple of reasons. First of all... The magistrate had before her. Before her. For a couple of reasons. First of all, if you look at this 29-page affidavit, the majority of the information in this affidavit deals with Montana Buds. Jesse Campbell is not part of Montana Buds. So what? The question is, was there a probable cause upon which to issue the search warrant? Address that, please, and spare us the relation. As it dealt with Jesse Campbell, there were two things that were listed in there. Number one, this source of information saying that there were large quantities of marijuana that were purchased. And number two, that there were power records that confirmed that there was a grow at the location in Bozeman on this hidden valley. Those are the two things that the magistrate had to look at. And why was it not appropriate to grant it based upon those fed information? Because the reliability of the information that was provided by the source. He is completely unreliable. This is a known felon who is... Is it your point that known felons can't be reliable for sources of search warrants? Well, I think that it's not that they can't be reliable, but their reliability is subject to question. Well, isn't that... Are you claiming a Frank's error? I don't know that it would rise to the level of a Frank's error. Then why don't we get on to your other points? Well, I think that we still have to deal with the point on the search warrant because... You think there was no probable cause to make the magistrate think that there was a violation of Federal marijuana laws? Well, I think based upon the appropriations writer, there is a question there. I mean, the appropriations writer says that the Department of Justice cannot issue or use funds for the prosecution... Did you argue that in your brief? Yes, we did. Where? Absolutely. That is one of the main points on the motion to dismiss or enjoin, which is the appropriations writer. Is obtaining a search warrant a prosecution? Absolutely it is. Why? Has a case been filed at that point? Has he been charged with a crime? He had not been charged with a crime, but we have Federal agents who are acting on the search warrants. There are salaries being expended there. Yes, that is Department of Justice's right. What does it mean that the appropriations writer speaks of the Department of Justice? Well, the appropriations writer, the Rohrbach Amendment, goes to say that the Department of Justice is prohibited from using funds... Right. ...on the prosecution of an individual that is in compliance with their state's... Were these FBI agents or DEA agents? I believe they were DEA agents. Are they part of the Department of Justice? Yes, they would be. My note indicates, Counsel, that Campbell does not argue that his motion to suppress should have been granted because the DEA violated the appropriations writer. He argues only the search warrant lacked probable cause. That is true, Your Honor. Well, then... That is true. ...that's contrary to what you said a moment ago. So why don't we please concentrate on the points that you have on this appeal. On the search warrant, the search warrant is not based upon reliable information because the agents did not corroborate it. The only point that they corroborated was the fact that there were excessive power records. That's it. And that's what the underlying district court judge held, that there was sufficient corroboration. There were five to nine times more power than on similar property? Well... And that's a very substantial number. You would agree to that, wouldn't you? Well, I would agree that it's a substantial number if we're talking about someone's residential property. If we're looking at my property in Billings, Montana, yeah, that would be a lot. But I am not a licensed medical marijuana provider, and Mr. Campbell was. He had been licensed with the state since 2014. He had openly been a provider, and that's why he had card holders. Well, he was authorized to have 31 ounces. Is that correct? Absolutely. Okay. And they found 28 ounces that would be in the condition that could be sold. But the total number ended up being 34.8 pounds of marijuana in one state or another. Is that correct? In the property? 34. Okay. And didn't the judge in this case find that there was reasonable cause to believe that it was beyond the amount allowed by the MMA? He did find that, and that's there. And isn't there a reasonable basis for him to find that? Based on the amount of marijuana that was found altogether, combined with your client's statement, although your client didn't say how much was there, your client did indicate that this mixture that the officer heard put together would have contained some marijuana that was usable and saleable under the MMA. Isn't that correct? He did indicate that there could be some in there. But he also said, I can't speculate. What he said was that there are 28 ounces of usable marijuana for sale that I have. What's in that tub of 34.8, which, by the way, is a gross amount, it includes the weight of the tub, but we don't know what's in that tub because they didn't check to see if it's wet, is it drying, is it dried, is it cured. We don't know. And unfortunately, we can't figure out what it is now. Okay. You're almost out of time. Do you want to save some time for a rebuttal? I do. Thank you. Thank you. May it please the Court, Tim Tatarka of the District of Montana on behalf of the United States. I'll start with the issue of suppression since that's where defense counsel started. Could you speak a little louder or get those microphones close to you? Your voice tends to trail off. I'll start with the issue of suppression since that's where defense counsel started, but I'm happy to answer any questions this Court has. The cert warrant contained, the standard of review here is very deferential to the magistrate. There just has to be a substantial basis that there be contraband or evidence of a criminal activity, and that means activity under federal law. In this case, there was not only evidence. There was not only corroboration with respect to Jesse Campbell and the illegal activities that he is involved in, but also the fact that there was corroboration with respect to the activities of Montana Buds does go to the reliability of the witness in looking at the totality of the circumstances. I would recommend this Court's attention to this Court's case in Angelo Lopez, which makes the point, and it's cited in our brief, makes the point that if an informant is giving information that is proven truthful about drug trafficking in one area, he's more likely to be truthful with respect to other drug trafficking crimes as well. And that's even in a case when the parties aren't related. Here we are dealing with the same constellation of individuals in both cases. Go ahead. I'm sorry. So the corroboration was both to the illegal activity, the illegal sales at Montana Buds, and to the illegal grow operation that Jesse Campbell was operating. Let me ask you a question. So Judge Jabea raised the point about whether or not the motion to suppress had raised the issue of the Rohrabach Amendment. Was it raised at all at the motion to suppress stage? The motion to suppress and the motion to enjoin the hearing on those two was combined, but they were distinct issues. The challenge for the motion to enjoin was separate from the motion to suppress, and the argument on the motion to suppress was not made that the motion to suppress was the proper remedy to a violation of the Rohrabach Affair, if that makes sense. It does. In our opinion in, what is it? What's the name of our? McIntosh. Yes, McIntosh. We refer to the amendment as prohibiting actions by the Department of Justice. Does obtaining a search warrant sort of fall within that? I think it's important to keep the two issues separate. I'm just curious. So I do think that the DEA, and it certainly is the policy of the Department, and I think it's true that the DEA would need to have a good faith belief that they're not in compliance because they would have to have a good faith belief that they could bring a prosecution in order to conduct the investigation. Otherwise, there's a potential for harassment or something like that. But I think it is important to keep that distinct from the issue of suppression, that I don't think there's certainly no cases, and I don't think there's any reason why the Fourth Amendment would be implicated in that and that suppression would be the proper remedy. So what does it mean, though, that if they don't, if the DEA didn't have a good faith belief that they were not in compliance with? How does that? I'm just trying to figure out how all this works. Yeah, no, I guess there's a possibility that you could make an argument that there was something like an abusive process or, I don't know, conceivably a Bivens claim or something like that. But the way this comes up, it's only brought up because they were sort of, the motion to enjoin and the motion to suppress were sort of addressed at the same time. Correct, Your Honor. And, again, there was definitely no allegation that the suppression under the Fourth Amendment was the proper remedy for a violation of Roebuck reform. Well, since we're on the amendment, why don't we just shift to what the district court did, which is what I found somewhat interesting. Who does have the burden of proof? So the burden of proof, and every district court that has addressed this in the Ninth Circuit has found that the defendant has the burden of proof to show, by preponderance of it, the evidence that they are in strict compliance with. I mean, isn't that troubling? No, I think that's absolutely consistent with the general principle. The amendment is directed to the Department of Justice. But it's important to remember where we're sitting. We're sitting at an appeal for a motion for an injunction, and the general rule is if you're going to move to get an injunction, you have the burden of showing that you're entitled to that injunction. The only way that Jesse Campbell is entitled to an injunction here is if he's able to show that the Department of Justice is, this prosecution is in fact prohibiting the states from enforcing their medical marijuana laws. And as this Court has interpreted that as Macintosh, that means. It seems, what struck me is the district's burden shifting was a little bit odd. Yeah. The burdens he basically gave each side. Offsetting burdens made no sense to me. I agree it's a little confusing because it does seem like they can't both have the burden of the same thing. I think the right way to read what the district court said is the district court or the government has some burden of making a prima facie case of a violation. I think the defense counsel below made a fair point that it makes sense for the department to have to point to some violations so that we know what we're talking about in this hearing. It seems like the way it should work is that, sure, the defendant is the one who's raising the issue, so the defendant should go forward with something. But it seems like the burden should be on the government. I disagree. The ultimate burden. I think besides the point about the injunction, the other point, which was raised in the Daleman case in the Eastern District of California and followed here is the burden should appropriately be on the party that has possession of the information. I think this case is a good example, particularly with the point of whether or not Mr. Campbell was in compliance with the application. Because the government can put forward the prima facie case he didn't own the house and he didn't submit a landlord approval. Yet he did submit it. His mother gave him written permission.  There is a requirement in supplemental excerpts of record one, that application notes that there is no renewals that the application has to be done. I mean, once the mother says you can use my house to raise marijuana, does she have to say, and I'll send you a letter saying that every week? No, no. But for his application to be proper, he does have to have that landlord approval. And he had it from his mother? In a previous application. Not in his 2016 application. Does he have to get a new permission every time he applies? In order to complete the application, he does. But I want to separate. I don't want to, or I want to be able to go, if I've answered your question, I want to go back to Judge Pius. I'd also like to have you address the question of whether the 34 pounds were, quote, usable marijuana when they were still drying. There were, the district court did not clearly err in finding that there was more than 31 ounces of dry processed marijuana based on the record. Dry and processed is not the adjective used. It's usable. Usable by a person for medical marijuana purposes. So did the district court go wrong in using the improper measure? No, I don't believe so because there is no, there's no evidence here that the dry marijuana was not usable. That's the burden of the United States of America, to show that the dry marijuana was usable within the meaning of the statute. I disagree. You do? Why? Well, I think the ultimate burden does belong on Mr. Campbell, to show that he was in strict compliance with the medical marijuana laws. And he shows it. He says, I had 28 ounces of usable marijuana. The 34 pounds were not usable. But I think to find clear error here, the court would have to find that the district court erred in finding that more than 31 ounces were dry and that there's ample evidence in the record. Not dry, usable. We disagree on that. Go ahead. We're over your time.  Thank you very much. Thank you. You bring up an excellent point. Thank you. And one I think that was lost in the district court, which is dried does not equal usable. The definition for usable is it is dried and it is used for the purpose of  It has to be of a medicinal quantity. And the only evidence before the district court was Jesse Campbell's. The government presented nothing. He says, I've got 28 ounces. That's what I've got. He could have 31, but he only had 28. And that's the only evidence of usable marijuana presented. Anything else of what was in that 34.8 of dried, wet, processed, we don't know. The government didn't have an expert to testify that dry meant usable? No. The government had no expert. And that's another thing, that the government doesn't know what compliance is. So why is it that it is the defendant's burden to say I'm in compliance? Under our statutes, the Montana's medical marijuana statute, it says there is a presumption of compliance if you have the correct amounts and you've got the license. And the only way to rebut that is to show that it was not for the purpose. The amount that you have was not for the purpose of alleviating the debilitating symptoms that your cardholders have. Well, Agent Hurd testified that what he saw, some of what he saw, he described as dried and processed. Agent Hurd doesn't know what the medical marijuana industry requires. All of those agents, and please read the suppression to show how these agents made it very clear. I'm not interested in compliance. I don't know how many seedlings, how many flowering plants, how many clones. I don't know how much power is used. I don't know anything about Montana medical marijuana. Is hash oil authorized by the MMA? Yes, it is. And Ms. Lubke, who was the expert or the representative from the Department of Public Health and Human Services, which is the agency charged to regulate this, said, yes, it is authorized. It is authorized because marijuana-infused products are not limited to edibles, ointments, or tinctures. And a hash oil is used in a vape pen, and it is vaporized. It is not smoked. So, yes, it is authorized. Okay. Thank you. Thank you. Thank you very much. The matter is submitted at this time.
judges: Paez, Bea, Royal